UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 19-257 (MJD/KMM)

| | |
|---|---|
| UNITED STATES OF AMERICA,           )<br>                                                              )<br>               Plaintiff,                      )<br>                                                              )<br>        v.                                              )<br>                                                              )<br>AMANDA MARIE LETOURNEAU, and  )<br>                                                              )<br>MICHAEL ALLEN VOELZ,          )<br>                                                              )<br>               Defendants,                 ) | **CONSOLIDATED RESPONSE OF THE UNITED STATES TO DEFENDANT'S PRETRIAL MOTIONS** |

The United States of America, by and through its attorneys, Erica H. MacDonald, United States Attorney for the District of Minnesota, and Nathan H. Nelson, Assistant United States Attorney, hereby submits its consolidated response to defendant's pretrial motions in the above-captioned case, contained at docket entries 29-46.

**I.    DISCOVERY MOTIONS:**

   **A.    Motion for Discovery** (ECF No. 29 (Voelz) and 45 (Letourneau)).

The defendants move the Court for an order compelling the government to disclose certain information.  The United States does not object to these motions to the extent they seek material covered by Federal Rules of Criminal Procedure 16.  The United States has already complied with Rule 16(a)(1)(A)-(F) and has made available additional discovery not required by law.  Furthermore, all physical evidence within the possession of the United States is available for inspection by the defense at a mutually agreeable time and location.  The United States understands its continuing discovery obligations and will fully comply with those requirements.

With respect to the defendants' request pursuant Rule 16(a)(1)(G) for a written summary of any expert testimony the government intends to use at trial, the United States will fully comply with those obligations. At this time, however, the government does not know the identity of the expert witnesses it will call at trial. The government anticipates calling: (1) a BCA laboratory forensic scientist to testify as to the laboratory testing of drugs, specifically the identity, quantity, and properties of the drugs seized from the defendants; (2) an ATF witness or other firearms expert to testify regarding the firearms seized from the defendants, including the interstate nexus of those firearms; and (3) a qualified law enforcement officer to provide expert testimony regarding drug trafficking practices, including information regarding the manufacture, packaging, transportation, dissemination, and sale of methamphetamine. Additional forensic testing is still outstanding, and the United States will supplement its disclosures with the results of any additional tests. The United States respectfully requests that the Court order that all Rule 16(a)(1)(F) and (G) disclosures of both parties, including the expert witness's curriculum vitae and summary of anticipated testimony, be made no later than three weeks before trial. Such a timing requirement allows the parties sufficient notice of the expected testimony and time to prepare a focused cross-examination of the expert. *See* Fed. R. Crim. P. 16 advisory committee's note, 1993 Amendments.

The United States objects to defendants' motions, however, to the extent they seek materials not covered by Rule 16.

  **B.**  <u>*Brady/Giglio* **Material**</u> (ECF No. 30 (Voelz) and 44 (Letourneau)).

  Defendants have moved the Court for an order compelling the government to disclose any evidence that may be favorable to the defense or relevant for impeachment purposes. The United States is aware of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny. The United States has complied, and will continue to comply, with those obligations. To the extent evidence exists which is both favorable to the defendant and material to either guilt or punishment, the evidence will be, or already has been, timely disclosed to the defendant. However, *Brady* is not a "discovery device," *United States v. Bowie*, 618 F.3d 802, 818 (8th Cir. 2010), and "does not *require* pretrial disclosure," *United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005) (emphasis added). Indeed, "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Madsen v. Dormire*, 137 F.3d 602, 605 (8th Cir. 1998) (quoting *Weatherford*, 429 U.S. at 559); *United States v. Ruiz*, 536 U.S. 622, 628 (2002) ("the Constitution does not require the prosecutor to share all useful information with the defendant"). Rather, "due process is satisfied if the information is furnished before it is too late for the defendant to use it at trial." *Almendares*, 397 F.3d at 664.

  **C.**  **Rule 404(b) Evidence** (ECF No. 32 (Voelz) and 42 (Letourneau))

  Defendants move the Court for an order directing the United States to disclose any evidence of "bad acts" or "similar course of conduct" that the United States intends to introduce at trial, pursuant to Federal Rules of Evidence 404(b). The United States is

3

aware of its obligations under Rule 404(b) and will comply with those obligations no later than three weeks before trial.

The United States also respectfully requests that the order be drawn strictly to require no more than what is encompassed by Rule 404(b).  Specifically, Rule 404(b) does not encompass acts that are "intrinsic" to the charged offense.  *United States v. Young*, 753 F.3d 757, 770 (8th Cir. 2014) ("Rule 404(b) applies only to extrinsic, not intrinsic, evidence"); Fed. R. Evid. 404 advisory committee's notes, 1991 Amendments.  If conduct of the defendant is an "intrinsic" part of any of the charged offense but could otherwise be considered a "bad act," then Rule 404(b) does not contemplate that notice of such evidence be given.  The distinction is an important one as defendants may claim that the United States must give notice of every "bad act" it intends to introduce, which is not so.  *United States v. Adediran*, 26 F.3d 61, 63 (8th Cir. 1994) (standards applicable to evidence under Rule 404(b) do not apply to such "inextricably intertwined" evidence).

**D.**     **Jencks Material** (ECF No. 34 (Voelz) and 43 (Letourneau)).

Defendants moves the Court for an order compelling the United States to make pretrial disclosure of Jencks Act material in this case.  In particular, the defendants seek disclosure of Jencks Act material two weeks before trial.

The United States objects to this motion.  Federal Rule of Criminal Procedure 16(a)(2) specifically excludes statements made by government witnesses from pretrial discovery, except as provided in the Jencks Act.  The Jencks Act provides in relevant part that statements or reports made by a prospective Government witness are *not* subject to "subpoena, discovery, or inspection *until said witness has testified* on direct examination

in the trial of the case." 18 U.S.C. § 3500(a) (emphasis added); *see also United States v. Collins*, 652 F.2d 735, 738 (8th Cir. 1981). Indeed, the established rule in this Circuit is that, ordinarily, the United States may not be required to disclose Jencks Act material prior to the direct examination of the witness to whom the material pertains. *See, e.g., United States v. Green*, 151 F.3d 1111, 1115 (8th Cir. 1998); *United States v. Wilson*, 102 F.3d 968, 971-72 (8th Cir. 1996); *United States v. White*, 750 F.2d 726, 728-29 (8th Cir. 1984). Accordingly, the United States objects to any court-ordered disclosure of such statements prior to the witnesses' testimony.

Notwithstanding the above, the parties have voluntarily agreed to make reciprocal disclosure of Jencks Act material not already disclosed no later than three business days prior to trial so as not to delay the progress of trial.

   E.   **Retention of Rough Notes** (ECF No. 35 (Voelz) and 46 (Letourneau)).

Defendants move the Court for an order compelling the retention of rough notes prepared by law enforcement agents and informants in connection with this matter. It is well-established in the Eighth Circuit that the government is not required by law to preserve rough notes taken by agents during an investigation. *See United States v. Grunewald*, 987 F.2d 531, 535 (8th Cir. 1993). In this District, however, the United States does not normally object to pretrial motions that seek the agents to retain their rough notes. Accordingly, the United States does not object to this motion to the extent that any such rough notes still exist. However, the United States opposes any request for the disclosure of those rough notes to the defendants. *See United States v. Redding*, 16 F.3d 298, 301 (8th Cir. 1994) (concluding rough notes are not a statement of a witness as there was no

5

evidence witness signed, adopted or approved of notes); *see also United States v. Shyres*, 898 F.2d 647, 657 (8th Cir. 1990) (finding defendant not entitled to discover government agents' general notes from witness interviews).

### F.     **Disclosure of Informants** (ECF No. 41 (Letourneau))

Defendant Letourneau moves the Court for an order compelling the government to disclose the identity of any confidential informants utilized in the investigation of this case, and to make such individuals available for interview.  This case involves the use of two informants.  In particular, between July 25 and August 26, 2019, law enforcement used two confidential reliable informants (CRI) to conduct four controlled purchases of methamphetamine from defendant Michael Voelz at the home he shared with defendant Amanda Letourneau and their small child.  Although the purchases were set up through defendant Voelz, defendant Letourneau was also involved in at least some of the purchases as well.  The final controlled purchase served as the probable cause for a warrant to search the defendants' home, and the drugs and firearms found in that search warrant form the basis for Counts 1-3 of the Indictment.  (*See* Govt. Ex. 1).

The government opposes the motion for pretrial disclosure of informants.  Courts have recognized that the government has a "privilege to withhold from disclosure the identity of an informant [which] arises because of the need to protect the public interest in effective law enforcement." *United States v. Grisham*, 748 F.2d 460, 462 (8th Cir. 1984). "The informant privilege encourages citizens to communicate their knowledge of the commission of crimes to law enforcement officials by preserving their anonymity." *Id.* The privilege, however, is not absolute, and the issue of disclosure of an informant's

identity "depend[s] on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro v. United States*, 353 U.S. 53, 62 (1957). "Certainly one of the most relevant factors to be weighed by the court [in determining whether to order disclosure] is whether or not the evidence is *material* to the accused's defense or a fair determination of the cause." *United States v. Barnes*, 486 F.2d 776, 778 (8th Cir. 1973) (emphasis in original).

It is well-settled that disclosure of the identity of a tipster informant is not required under the law. *United States v. Bradley*, 924 F.3d 476, 482 (8th Cir. 2019) ("[T]he identity of a 'tipster' whose observations formed the basis for a search warrant but who is not a necessary witness to the facts is not subject to compulsion."). Stated differently, "disclosure is typically not required when the informant merely conveys information to the government but neither witnesses nor participates in the offense." *United States v. Lapsley*, 334 F.3d 762, 764 (8th Cir. 2003).

Here, the offense charged in the Indictment is the defendants' possession with intent to distribute methamphetamine found in their home on the date of the search warrant, August 28, 2019, as well as the defendants' possession of firearms on that date. The informants were not present at the defendants' home on August 28 and did not participate in or witness the defendants' possession of methamphetamine or firearms on that date. Accordingly, the defendant has not met her burden of showing she is entitled to disclosure of the informants' identity and the Court should deny defendant's motion.

Despite the fact that the informants were not witnesses to the charged conduct on August 28, 2019, the undersigned counsel agrees there *may* possibly be circumstances in which the information from the controlled purchases could be relevant and admissible at trial, and the government could call an informant to testify. At this point, the government does not know whether it will call an informant to testify at trial. Should the government elect to call the informant(s), the United States will disclose the informant identity as required by the district court's deadline for disclosure of witnesses, but in any case no later than two weeks before trial.

G. **Disclosure of Forensic Testing** (ECF No. 3 (Voelz)).

Defendant Voelz moves the Court for an order directing the government to disclose the reports and results of any forensic testing pursuant to Rule 16(1)(F). As noted in the response to the defendant's discovery motion (above), the government is aware of its obligations under Rule 16 and will continue to comply with those obligations. The specific forensic testing requested by defendant relates to the identity, quantity, and purity of the drugs seized by law enforcement in the controlled buys and search warrant. That testing is currently underway and no results are available. The government will supplement its disclosures when the results of the testing become available.

II. **MOTION TO DIMISS** (ECF No. 31 (Voelz))

Defendant Voelz moves to dismiss the Indictment against him on the grounds that "the indictment lacks the requisite specificity and merely recites the language of the charging statute." This motion is entirely without merit.

An indictment is "sufficient if it fairly informs the accused of the charges against him and allows him to plead double jeopardy as a bar to a future prosecution." *United States v. White*, 241 F.3d 1015, 1021 (8th Cir. 2001) (quotations omitted). "Usage of a particular word or phrase in the indictment is not required as long as [the court] can recognize a valid offense and the form of the allegation substantially states the elements." *Id.* (cleaned up). An indictment is "insufficient only if an essential element of substance is omitted." *Id.* (quotations omitted).

Here, defendant does not allege that the indictment omitted an essential element. Rather, defendant claims only that the indictment is insufficient because it recites or tracks the language of the charging statutes. Defendant, however, cites no law or authority that an Indictment is insufficient if it tracks the statutory language. On the contrary, the Eighth Circuit has held that "[a]n indictment is normally sufficient if its language tracks the statutory language." *United States v. Steffen*, 687 F.3d 1104, 1113 (8th Cir. 2012) (citing *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008). Because the Indictment alleges all the essential elements of Counts 1 and 3, the Court should deny defendant's motion to dismiss.

### III. MOTION TO SUPPRESS EVIDENCE:

A. **Motion to Suppress Search and Seizure and Motion for a Franks Hearing** (ECF No. 36 (Voelz) and 39 & 40 (Letourneau)).

Defendants move to suppress physical evidence—including methamphetamine, firearms, and other evidence—found during the August 28, 2019 search of their home by police pursuant to a warrant. The defendants also request a hearing pursuant to *Franks v.*

*Delaware*, claiming that there are material false statements or omissions in the search warrant affidavit that were necessary to the probable cause for the search warrant.

### 1. Request for a *Franks* Hearing

With respect to the defendants request for a *Franks* hearing, they have not met their initial burden of making a "substantial preliminary showing" that: (1) "a law enforcement official either recklessly or deliberately included a false statement in the affidavits in support of the search warrants," and (2) "that the alleged false statement or omission was necessary to the finding of probable cause." *United States v. Engler*, 521 F.3d 965, 969 (8th Cir. 2008). "Such a showing is not easily made." *Id.* "A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing." *United States v. El-Alamin*, 574 F.3d 915, 924-25 (8th Cir. 2009). Without such a showing, they are not entitled to a hearing. *United States v. Milton*, 153 F.3d 891, 896 (8th Cir. 1998).

Here, defendants have not alleged any specific false statement or omission in the search warrant affidavit, much less offered any proof in the form of a sworn affidavit or other evidence. During the parties' meet and confer regarding the motions, counsel for the government requested that defendants identify the particular false statement or omission on which they intended to rely. Both defendants' counsel advised that, at present, they could not identify any particular false statement or omission in the affidavit but were in the process of conducting an investigation. Counsel further advised that, if a false statement or omission could be identified from their investigation, the defendants would file a memorandum detailing that fact. (*See* ECF 47 ¶ 3; *see also* ECF 48 ¶ 8). At

present, defendants have not filed a memorandum or otherwise identified any false statement or omission in the search warrant affidavit. In the absence of this substantial preliminary showing, the Court must deny the defendants' motions to the extent they seek a *Franks* hearing.

## 2. Probable Cause to Search

Defendants' motions to suppress also claim that the search warrant affidavit failed to set forth probable cause justifying the search. To the extent the defendants persist in this aspect of their motion, the government intends to offer a copy of the search warrant affidavit and documents into evidence at the motions hearing as **Exhibit 1**.

In brief, the search warrant affidavit reveals that police had been working with a confidential reliable informant ("CRI") who, within the past 72 hours, had made a controlled purchase of methamphetamine from defendant Voelz at his residence in Danube, MN. (Ex. 1 at p. 3). The CRI was searched prior to the controlled purchase and outfitted with an electronic transmitting device, which allowed officers to record and monitor the CRI's conversations. (*Id.*). The CRI was also given recorded U.S. currency to conduct the purchase. (*Id.*). Officers followed the CRI to Voelz's residence and officers heard the CRI and Voelz discussing amounts and prices. (*Id.*). After the purchase, officers followed the CRI back to a predetermined location where the CRI turned over methamphetamine. (*Id.*). The affidavit noted that this controlled purchase was the latest in a string of multiple controlled purchases the CRI had conducted from defendant Voelz at the residence. (*Id.*). The seller in each case was positively identified as defendant Voelz. (*Id.*). All of the controlled purchases took place outside the residence itself but

11

occurred on the property. (*Id.*). The CRI indicated that there were also multiple firearms located on the property. (*Id.*).

The affidavit sought permission to search defendant Voelz, the residence, the outbuildings, and a 2008 Dodge Ram pickup registered to defendant Voelz that was present during the controlled purchases. (*Id.* at pp. 3-4). The affidavit noted that drug dealers will commonly store drugs, paraphernalia, and proceeds from drug sales on their person, or in their vehicles, residence, or outbuildings. (*Id.*).

Because the above information is sufficient to establish probable cause to believe that drugs, evidence of drug trafficking, recorded buy funds, firearms, and other evidence would be found on the premises of defendant's residence, the Court should deny the defendants' motion to suppress on this ground.

### 3. Search of Additional Vehicle Registered to Letourneau

Defendant Letourneau also seeks to suppress evidence seized from the search of a vehicle registered to her that was located at the residence on the day of the search warrant, and from which police recovered a cellular phone, on the ground that the vehicle was not specifically named in the warrant. The government may call a witness to address this aspect of defendant's motion to suppress and requests the opportunity to brief this issue following further development of the factual record at the hearing.

B. **Motions to Suppress Statement** (ECF No. 37 (Voelz) and 38 (Letourneau)).

Defendants also move to suppress statements they made to police during the August 28, 2019 search warrant. The government intends to call a witness to address this motion at the hearing and believes the evidence will show as follows:

On August 28, 2019, police executed a search warrant at defendants' residence. The defendants were detained pending execution of the warrant. While police were executing the warrant, defendant Letourneau expressed a desire to cooperate with police and offered to show them where drugs were located on the property. Defendant Letourneau then accompanied officers to several places on the property and pointed out where drugs were located. Ultimately, police found approximately a pound and a half of methamphetamine, along with numerous guns and drug paraphernalia.

The lead investigator, Officer Bill Hudson, then separately interviewed defendants Letourneau and Voelz. The interviews were audio recorded and the government intends to offer copies of the recordings into evidence at the motions hearing as **Exhibit 2** (Letourneau interview) and **Exhibit 3** (Voelz interview). During her interview, defendant Letourneau reiterated her willingness to cooperate. (Ex. 2 at 0:00-0:20). After asking preliminary biographical questions, Officer Hudson began by reading each defendant their *Miranda* rights. (Ex. 2 at 1:45-2:25; Ex. 3 at 0:45-1:15). He asked if each defendant understood their *Miranda* rights, and they both said they understood their rights. (*Id.*) Officer Hudson then asked if each defendant was willing to speak with him, and each defendant said they were willing. (*Id.*). He further told defendant Letourneau to tell him if she did not want to answer any question, and that he would stop talking to her whenever she wanted. (Ex. 2 at 2:05-2:25). Both defendants then made statements to police.

During her conversation with Officer Hudson, defendant Letourneau also added at one point "when that thing [the recording device] not going I'd like to speak with you." (Ex. 2 at 0:25-0:35). Towards the end of the recorded interview, Officer Hudson asked

13

defendant Letourneau if she had any questions for him, to which defendant Letourneau replied "not while I'm being recorded."  (*Id.* at 11:20-25).  After the recording device was turned off, however, defendant Letourneau agreed to discuss information regarding her methamphetamine supplier, and made additional incriminating statements about how she obtained methamphetamine.

The Court should deny defendant's motion to suppress.  Defendant Letourneau's initial incriminating statements (during which she agreed to point out drugs in the house) were not the product of custodial interrogation by police.  The undersigned counsel is not aware of defendant Voelz making any pre-*Miranda* incriminating statements to the police.  Both defendants recorded incriminating statements were made after being fully informed of their rights and indicating that they understood those rights.  Both defendants then explicitly waived those rights, agreed that the officer could ask them questions, and answered questions for approximately 10-15 minutes.  *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010); *United States v. Adams*, 820 F.3d 317, 323 (8th Cir. 2016).  At no point did either defendant invoke their right to remain silent or request a lawyer.  Defendant Letourneau then made additional incriminating statements after the recording device was turned off at her request.

The United States requests the opportunity to brief this issue after the development of a factual record at the hearing.

Dated:   November 27, 2019

        Respectfully Submitted,

        ERICA H. MacDONALD
        United States Attorney

        *s/ Nathan H. Nelson*

        BY: NATHAN H. NELSON
        Assistant United States Attorney
        Attorney ID No. 388713